Loring, J.,
delivered the opinion, of the court:
The petitioners claim of the United States $13,000 upon a charter-party which they allege was made between the United States of the first part, and the petitioners of the second part, on the 29th August, 1863, in the terms following :
“United States Ship Pensacola,
“ New Orleans, August 29, 1863.
“This charter-party, entered into this 29th day of August, 1863, between. Commodore Henry H. Bell, United States navy, commanding western gulf squadron, of the first part, and Bichard Ryder, master of the schooner Mannahasset, of the second part, witnesseth : That the party of the second part, for and in consideration of the sum of fifty dollars per day, to be paid to him by the party of the first part, does hereby agree to take to the coast of Louisiana and Texas three hundred and twenty-five tons coal, and deliver the same to and subject to the order of the senior naval officer. It is further agreed by the party of the first part, that the war risk on the above-named vessel, amounting to thirteen thousand dollars, is assumed by the government of the United States until her discharge from this charter; and that all expenses of pilotage and towage, and quarantine fees, whilst under this charter, shall be paid by the party of the first part.
“It is also understood by the contracting parties, that this contract is to terminate upon the return of the said vessel at the port of New Orleans, and that all damages incurred to her whilst under this charter, and not caused by her own neglect or fault, shall be made good and compensated for by the party of the first part, the dangers of the sea excepted.
“H. H. Bell,
“ Commodore Commanding United States Squadron pro tern.
“ BichaRD Ryder,

“ Master of Schooner Mannahasset

And the court find the facts to be—
That the said charter-party was made between the said parties.
That at the date of said charter-party the Mannahasset was in the port of New Orleans, and was owned then, and until her loss, by the petitioners in the proportions following, viz:
Daniel D. Baker.owner of.. 7-16
N. P. Mann, jr., A. J. Mann, N. P. Mann, copartners-do.... 4-16
E. Bacon and William P. Russell -■.do- 2-16
Daniel T. Lamson and Joshua Weston .. do- 1-16
*81 Richard Ryder owner of.. 1-16
Zenas Atkins. -do- 1-32
Joseph Ryder. -do- 1-64
James Stetson ....do- 1-64
16-16
That upon the execution of the said charter-party, the Mannahasset entered upon the service specified in it, and started from New Orleans on the 3d of September, 1863, with a full cargo of 360 tons of coal, and on the 8th of September she arrived off Sabine Pass, where the fleet of the United States then were, and reported to its commander,, and by his orders came to anchor outside of the fleet and about six-miles from the shore, and laid there two days to deliver coal to the vessels of the fleet as it was called for; she was then ordered by said commander to anchor nine miles from the shore, and she laid there till the 28th day of September, and delivered to vessels of the fleet about 240 tons of coal, leaving about 90 tons of coal undischarged ; that while lying at a single anchor on the afternoon of the 28th of September, the weather, which had been pleasant, changed, and a storm.-, approached, for which the vessel was immediately prepared; her yards-, and light spars were sent down, her sails were housed, and everything-made snug, so as to give the wind the least advantage, and her sheet anchor, or best bower, was let go, and the chains of both anchors paid out to their full length and kept from fouling. The storm increased, from 6 p. m., and blew a gale all night, with wind and hail, the chain of the best bower or sheet anchor broke, and the vessel went adrift; -, the stream anchor was then let go, and the whole length of its cable was paid out, and the vessel dragged her anchors to within a mile and, a half of the shore, where the water was shoaler, and she was partially/ land-locked. Between 3 and 4 a. m., her anchors caught and held' her, and she was safe and uninjured except in the loss of her sheet-anchor. She so remained for about four hours ; .at daylight she set a. signal of distress to attract the attention of the gunboats of the fleet; but it was not noticed, and the wind, though moderated, still blew heavily, and prevented her from making sail. Between 7 and 8 a. m., she was fired upon from a rebel battery on the shore, and the second shot cut awaythe cable of the stream anchor, and the schooner fell off,, before the wind, which carried her ashore. She was immediately boarded by the rebels, who captured the vessel, and made. her. crew *82 prisoners; they cut down the masts of the vessel and stripped her, and she was lost to the owners.
That when the charter-party was made, aud until fired upon as stated, the Mannahasset was a staunch and strong vessel, and rated as high as any of her class at that time; that she was well manned, and provided in sails, rigging, and ground tackle in all respects, and well managed in the stormy weather she encountered and resisted.
That when the storm had passed and the vessel was safe from all perils of the sea, she was lost by a shot from the rebel battery cutting her cable, so that she was driven ashore before the wind and was captured, without fault in her master or crew, then or at any time.
That she was worth the sum of $13,000, and was valued at that sum in the charter-party.
And upon the facts found we are of opinion that the Mannahasset was lost by a war risk within the charter-party, and which was to be borne by the United States, and that the petitioners are entitled to recover of the United States the said sum of $13,000, specified in the charter-party, for which judgment is rendered, and will he certified to the petitioners severally in the proportion of their respective interests in said vessel as above stated.
It was contended for the United States that “ the master of the schooner, knowing the proximity of the rebel batteries,” should, when the storm arose, have placed the vessel beyond the risk of being fired upon. But there is nothing in the evidence to show or suggest that he then knew the rebel batteries were there, or had any reason to know it, for he was nine miles from the shore, and they may have been sand batteries merely, and undiscernible till they exhibited themselves by their fire. Besides this, to have got his anchors up when an •increasing storm was blowing upon a lee shore, and the loss of a sail or a spar might have caused the loss of the vessel and crew, was an experiment that had more of peril than promise in it; and he had no reason to doubt the sufficiency of his ground tackle, which was abundant and in good order, and failed only by an accident that could not be foreseen, and which discredits neither his seamanship nor care.
Then the position of the schooner on' the morning of the 29th was not one of the master’s seeking, nor one he could avoid. He was carried there by wind and sea in the darkness of the night; and the evidence is distinct and uncontradicted that until he was fired upon and then the wind, though moderated, was blowing so heavily on to the shore that he could not make sail safely. That he dragged ashore with one anchor down suggests itself that he would have gone ashore *83 in getting both .up. He was then but about a mile from the shore and partially land-locked, and that he could have made an offing from that place is not claimed in the testimony.
It was also contended for the defendants that the vessel was lost altogether or in part by the perils of the sea, of which the United States were not to bear the risk. That the perils of the sea drove the Mannahasset into the place of the peril that destroyed her is true, and that makes the perils of the sea the remote cause of her loss, and not the proximate, and it is the proximate cause of the loss alone which determines the liability of the insurer. And on the morning of the 29th of September the Mannahasset was safe and whole ; the perils of the sea were past before she was fired upon, as completely as if a day or a month had intervened, and a new peril, distinct from the perils of the sea, and different in nature, and a war risk, occurred, and by that she was lost.